GRAND TRUNK RAILWAY COMPANY OF CANADA v. WOLCOTT.

1. CANCELLATION — REFORMATION OF INSTRUMENTS — MISTAKE — EQUITY.

The court of equity has jurisdiction to cancel a written contract from which a material clause has been omitted by mistake, upon a bill to reform the agreement, to enjoin an action at law on it, and for general relief.

2. SAME—EQUITY—CLEAN HANDS—PUBLIC POLICY—RESTRAINT OF TRADE.

The objection that the complainant does not come into court with clean hands, because the contract is an attempted restraint of trade, is not sustainable in a proceeding to which the public is not a party, when the agreement merely provides that a siding should be constructed to defendants' mill to connect with the complainant's track and that the defendants should not engage in elevator business in connection with any building on the siding.

Appeal from Macomb; Erskine, J.   Submitted December 13, 1909.   (Docket No. 124.)   Decided February 3, 1910.

Bill by the Grand Trunk Railway Company of Canada against Anson E. Wolcott and John P. Wolcott, copartners as Wolcott Bros., to restrain an action at law, and for the reformation of a contract.   From a decree for complainant, defendants appeal.   Affirmed.

The bill is filed to restrain proceedings at law, to reform a written instrument, and for general relief.   The court found that the instrument ought to be canceled, and not reformed, and ordered it to be delivered up to the register of the court for cancellation, provided complainant paid to defendants the sum of $75; "said payment being the terms upon which the relief by cancellation is granted." Defendants have appealed.   Under date March 18, 1901, after considerable correspondence between them, oral and written, the parties entered into a written agreement for the construction of a siding from complainant's track and right of way to defendants' mill, and for the use and maintenance of such siding.   Clause 21 of the agreement, which appears to have been written in ink upon a printed form, reads:

" (21) The contractor [defendant] agrees, in consideration of the premises, that he will not engage in an 'elevator business', so-called, in connection with any building or buildings to which this siding is laid, or in connection with any building which may be hereafter erected and reached by said siding; but will confine his business strictly to a 'milling business,' so-called."

The siding which this agreement provided for was not constructed.   Defendants purchased land upon which a more satisfactory siding could be constructed.   A new survey was made.   A new agreement for a siding, also in writing, dated July 19, 1901, was executed by the parties.   It did not contain the clause 21 above referred to.

The first contract was canceled by mutual consent. The siding was constructed. Thereafter it came to the knowledge of complainant that defendants were doing an elevator business. A controversy arose; complainant claiming that the substance of clause 21 of the first agreement should have been inserted in the second agreement, and had been omitted by mistake. Complainant meantime refused to furnish cars upon the siding, gave the notice for termination of the agreement which both agreements expressly provided for—a three months' notice—and finally removed connections so as to prevent use of the siding. Later the parties executed a new agreement, which bears date July 19, 1902, which contains a clause similar to that one numbered 21 in the first agreement and, also, the following:

"It is hereby agreed that two certain written agreements between the above parties, the one dated March 18, 1901, and the other dated July 19, 1901, are canceled and all rights under them terminated from the delivery hereof, they being superseded by this agreement."

The suit at law, begun October 9, 1906, was brought to recover damages for failure and for refusal of complainant to furnish cars on the siding during the period it is claimed the second agreement was in force. The bill of complaint charges that the restrictive clause was omitted from the second agreement by mistake.

OSTRANDER, J. (*after stating the facts*). It must be assumed, I think, that the railroad company violated the terms of the agreement of July 19, 1901, and that defendants have a right of action, at law, for any resulting damages, unless (1) all rights under the agreement were surrendered when the last contract was made; or (2) unless equity ought to and may treat the said second agreement as an agreement entered into by mutual mistake of the parties. The first point is argued at some length by counsel for appellants. It is not asserted by complainant as a ground for equitable relief. We do not consider it.

As to the second point: The complainant had leased land to one McIntyre, who had a siding, and who operated an elevator. The route for the siding first surveyed and agreed about was across the land leased to McIntyre. Complainant considered itself under some obligations to McIntyre to prevent competition in the business of buying and shipping grain at this point. It also believed, or assumed, that one elevator was sufficient for the local business of buying and shipping grain. These facts and views furnish the reasons asserted for the restrictive clause in the first contract with these defendants. As has been stated, the clause was written in ink upon a printed form, taking the place of a printed clause in the form bearing the same number. Defendants, having purchased land to secure a more suitable siding, and one which did not cross land leased to McIntyre, received and executed the second contract, a copy of which was later returned to them, which did not contain the restrictive clause. Complainant asks the court to find that the omission of this clause from the second contract was an inadvertence, oversight, mistake, on the part of complainant, and to find, further, that defendants had no reason to expect, and did not expect, to receive a contract with the clause omitted therefrom; in short, to find that the actual intention of both parties was to make a contract for a siding which should not be used in connection with an elevator business. That this was the original intention of the parties cannot be doubted. The division freight agent of complainant, in a letter of December 24, 1900, sending all papers in the matter to the local agent at Mt. Clemens, said:

"If the contracting parties are prepared to enter into an agreement to confine their business to milling and not engage in the elevator business at that point, I will recommend the building of the proposed side track on the terms. * * * If they wish to accept these terms, they must so state to you in writing, which attach to these papers and return."

Mr. A. E. Wolcott, then proprietor of the mill, did write, in reply,

"I am perfectly willing to accept the terms as offered by your company."

I find no testimony tending to prove that any other or different understanding was arrived at, excepting, of course, the terms of the second contract.   There is testimony on the part of defendants tending to prove that before the second contract was executed defendants had assurances from the proper officer or officers of complainant that they would be permitted to ship out grain bought locally out of condition for milling purposes, and that when they were requested to surrender the second contract, and did do so, they expected the restrictive clause to be inserted, but modified in accordance with such assurances.   When it was returned to them, containing the same restrictive clause as appeared in the first contract, they mutilated the duplicate which had been sent to them, and returned it to complainant.   It also appears that after it was discovered that the second contract did not contain the restrictive clause in question, and after defendants had been notified that the form of the contract must be corrected, defendants, on January 11, 1902, after cars had been refused them, wrote to the division freight agent, the officer of complainant who had charge of the matter, upon whose recommendation alone such sidings were installed, the following:

"If you consider that your company is under no obligation to receive grain from our siding, and that this is in accordance with Mr. A. E. Wolcott's agreement with you, then we are perfectly willing to let the matter stand as it is.   As soon as convenient, please send bill in full for labor and material, and we will send check to balance."

From this and other evidence I am satisfied that the second contract did not set out the agreement of the parties, and that defendants understood that it did not.   I am satisfied, also, that the execution and delivery of such a contract was an inadvertence on the part of complainant.

Appellants' contentions are: *First*, that the bill prays for reformation, and not for rescission, of the contract;

*second,* that there is no testimony tending to prove a mistake; *third,* that the contract has been recognized and canceled; *fourth,* if any mistake was made, it was due to the negligence and carelessness of complainant; *fifth,* the complainant's hands are not clean; *sixth,* rescission ought to be upon terms which will place the defendants *in statu quo; seventh,* the rights of the parties can be determined at law.    If, in fact, the contract does not express the agreement and understanding of the parties, and if the failure to express the actual understanding is due to inadvertence of one party, the other contentions which are made are, save only the fifth one, technical, rather than meritorious.

The fifth contention is grounded in argument, upon the theory that complainant's objections to entering into a contract without the restriction, and its conduct towards defendants after the contract was executed, are alike unconscionable; that the purpose of the restrictive clause was to prevent competition with McIntyre, and the whole arrangement was opposed to public policy and in restraint of trade.    It is a sufficient answer to say that both this and the lawsuit are adversary proceedings, to which the public is not a party.    In the lawsuit defendants seek to recover damages for the breach of an alleged agreement.    If no such agreement as is counted upon was actually made, there ought to be no recovery for its breach.    The contract which was actually made was mutual.    The writing made to evidence it does not express the mutual understanding.    The contract was not one which complainant was compelled to make.    It related to matter of mutual convenience and profit.    Further than this we are unable to say that the restrictive clause in the contract was intended to restrain trade, or that such would be its effect.

The fact that the bill prays specifically for reformation, and not for rescission, of the contract is not, in view of the testimony, and in view of the prayer for general relief, material.    The purpose of the bill is to remove—get

rid of—the written evidence of the contract relied upon in the suit at law. If it does not state the real understanding of the parties, it ought not to be usable in any proceeding brought to enforce it, or in one brought for damages for its violation. It may be that in a particular case it should be annulled and canceled upon terms. In this case we find no ground for saying that the terms made by the court below are not sufficiently liberal to defendants. The testimony is rather convincing that defendants have suffered no damages; that although they received and joined in executing the written evidence of a contract favorable to themselves, which they had not in fact made, they did nothing, suffered nothing, in reliance upon it for which complainant should compensate them.

The decree of the court below is affirmed.

MONTGOMERY, C. J., and HOOKER, MOORE, and McALVAY, JJ., concurred.